UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WALID JAMIL, an individual; and AWATIF JAMIL, an individual,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　v.<br><br>CAESARS ENTERTAINMENT CORPORATION, et al.,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:14-CV-1363 JCM (GWF)<br><br>ORDER |

Presently before the court is defendants Caesars Entertainment Corp., Steve Morris, Joseph Rahi, and Gerald Tuthill's motion to dismiss. (Doc. # 24). Plaintiffs Walid Jamil and Awatif Jamil filed a response (doc. # 28), and defendants filed a reply (doc. # 29).

**I.　Background**

This case stems from plaintiff Walid Jamil's ("Walid") default on a Caesars casino marker.[1] In October 2012, Walid and Caesars entered into a $450,000 casino marker. (Doc. # 1 at 3). Walid failed to repay the marker and defaulted. (*Id.*). Plaintiffs allege that Caesars improperly entered into the marker with Walid despite Caesars' knowledge, through its employees, that Walid did not have sufficient funds to repay the marker, had previously defaulted on another casino's marker, had gone through bankruptcy proceedings, and purportedly suffers from gambling addiction. (*Id.*).

---

[1] A marker is a gambling credit instrument that allows a gambler to receive all or part of the credit line the casino has approved for him, based on the gambler's prior credit application with the casino. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 529 (9th Cir. 2011).

**James C. Mahan**
**U.S. District Judge**

Walid asserts that Caesars, again through its employees, represented to him that the marker would not be referred to the Clark County district attorney for prosecution, even though Caesars is authorized to do so by law under Nevada Revised Statute ("NRS") § 205.130. (*Id.* at 4).

Caesars turned the marker over to the district attorney. (*Id.* at 5). Clark County issued a warrant for Walid's arrest. (*Id.*). Customs arrested Walid on February 24, 2014, when Walid was returning into the United States from the Dominican Republic. (*Id.*). Walid spent four days in jail before being released. (*Id.*).

Walid and his wife, Awatif, initiated the instant action on August 21, 2014, asserting numerous claims and requests for damages stemming from Walid's incarceration. (*See generally* doc. # 1).

## II.     Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

James C. Mahan
U.S. District Judge

- 2 -

Where the complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief." *Id.* (internal quotations and alterations omitted).  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### III. Discussion

Plaintiffs bring claims against defendants for (1) negligence; (2) gross negligence; (3) deceptive trade practices; (4) conversion; (5) civil conspiracy; and (6) unjust enrichment. (*See generally* doc. # 1).  Defendants move to dismiss plaintiffs' complaint in its entirety.

#### A. Negligence

To prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1158 (Nev. 2011) (citing *Sanchez v. Wal–Mart Stores*, 221 P.3d 1276, 1280 (Nev. 2009)).

Markers are "credit instruments," which "are valid and may be enforced by legal process." *Morales v. Aria Resort & Casino, LLC*, 995 F. Supp. 2d 1176, 1180-81 (D. Nev. 2014) (citing Nev. Rev. Stat. § 463.368(1); *In re Miller,* 292 B.R. 409, 414 (9th Cir. BAP 2003) (finding that a casino marker is a credit instrument pursuant to NRS § 463.368(1))). Further, the Nevada Supreme Court has held that casino markers are "checks" within the meaning of NRS § 205.130. *Nguyen v. State*, 14 P.3d 515, 518 (Nev. 2000).

Plaintiffs allege that defendants breached two duties owed to plaintiffs.  First, plaintiffs allege that Caesars and its employees owed plaintiffs a duty to evaluate Walid's financial condition before accepting the marker.  Second, plaintiffs allege Caesars and its employees owed plaintiffs a duty to assess whether Walid intended to defraud the casino at the time the credit was extended before referring the marker to the Clark County district attorney for prosecution.  Plaintiffs cite to no authority to support either alleged duty.

In a recent decision upholding a patron's prosecution and conviction under Nevada's bad-check statute (NRS § 205.130), the Nevada Supreme Court found that "[m]erely because the casinos have the ability to research a patron's financial status, they are under no obligation to do so . . . ." *Zahavi v. State*, 343 P.3d 595, 600 (Nev. 2015).  This eviscerates plaintiffs' claim that defendants owed plaintiffs any duty to investigate Walid's financial condition.

In the same case, the court found that "the element of 'intent to defraud' under NRS [§] 205.130 may be negated by a showing that the casino had knowledge that the person obtaining the marker did not have sufficient funds to cover the marker at the time it was executed." *Zahavi*, 343 P.3d at 600.  *Zahavi* demonstrates that "intent to defraud" may be relevant in a criminal proceeding i.e. *after* a marker has been referred for prosecution.  However, a casino has no duty to assess a person's "intent to defraud" before referring a defaulted marker to the district attorney.

Accordingly, the court finds defendants did not owe any duty to plaintiffs to (1) evaluate Walid's financial condition before accepting the marker; or (2) assess whether Walid intended to defraud the casino before referring the marker for prosecution.  Plaintiffs' claims for negligence will be dismissed.  *See Warmbrodt v. Blanchard*, 100 Nev. 703, 707, 692 P.2d 1282, 1285 (1984) ("In the absence of a breach of duty, there can be no negligence, as a matter of law.")

*B.  Gross negligence*

A claim for gross negligence is separate from a normal negligence claim.  *Martin v. Collier*, No. 2:11-cv-0320-LRH-GWF, 2011 WL 1628028, at *2 (D. Nev. Apr. 28, 2011).  To state a claim for negligence a plaintiff must establish that: (1) defendant owed a duty to the plaintiff; (2) the defendant breached that duty causing injury to the plaintiff; (3) the breach was the actual cause of

**James C. Mahan**
**U.S. District Judge**

- 4 -

the plaintiff's injury; and (4) the injury was a foreseeable consequence of defendant's breach. *See Hammerstein v. Jean Dev. W.*, 907 P.2d 975, 977 (Nev. 1995); *see also Prescott v. United States,* 858 F. Supp. 1461, 1471 (D. Nev. 1994). However, to state a claim for gross negligence a plaintiff must establish that the defendant failed "to exercise even the slightest degree of care" in his conduct. *Hart v. Kline,* 116 P.2d 672, 673–74 (Nev. 1941).

As plaintiffs cannot establish that defendants owed them any duty, plaintiffs necessarily cannot state a claim for gross negligence. Plaintiffs' claim for gross negligence will be dismissed.

C.  Deceptive Trade Practices

NRS § 598 "generally provides for a public cause of action for deceptive trade practices." *Nev. Power Co. v. Eighth Judicial Dist. Court of Nev.,* 102 P.3d 578, 583 n.7 (Nev. 2004). However, NRS § 41.600 provides that a victim of "consumer fraud" may assert a private cause of action. *Id.* Consumer fraud includes "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." *Id.* (quoting NRS § 41.600(2)(d)).

Plaintiffs allege violations of "various sections of the Nevada Deceptive Trade Practices Act, including, but not limited to N.R.S. §§ 598.0915(15), 598.092(8), and 598.0923(4)." (Doc. # 1 at 7). Plaintiffs assert that, in extending gambling credit to Walid and permitting him to gamble with these funds at Caesar's, defendants "expressly and impliedly promised to adhere to certain principles in the treatment of its gambling customers as set forth in its Code of Commitment and Responsible Gaming policy and the legal requirements imposed by Nevada law and the Nevada Gaming Control Board."

NRS §§ 598.0915(15), 598.092(8), and 598.0923(4) define deceptive trade practice as, when a person, in the course of his or her business or occupation: "[k]nowingly makes [a] false representation in a transaction," "[k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction," or "[u]ses coercion, duress or intimidation in a transaction." *See* NRS §§ 598.0915(15), 598.092(8), and 598.0923(4). Furthermore, the Ninth Circuit has held that allegations of fraud must be pled with particularity as to the "time, place, and content of an alleged misrepresentation." *Yourish v. Cal. Amplifier,* 191 F.3d 939, 993 (9th Cir.1999); *see also* Fed. R. Civ. P. 9(b).

James C. Mahan
U.S. District Judge

- 5 -

Plaintiffs' complaint alleges the following: First, a Caesars employee told Walid that, despite his credit history, he would be able to secure his supervisors' approval and issue Walid a $450,000 marker. (Doc. # 1 at 3). Second, Walid received the $450,000 marker. (Doc. # 1 at 4). Third, after Walid defaulted on the marker, an employee represented to Walid that Caesars would not take action on the defaulted marker. (Doc. # 1 at 4). Fourth, despite these alleged representations, Caesars turned the defaulted marker over to the Clark County district attorney, which led to Walid's arrest. (Doc. # 1 at 5).

Defendants assert that plaintiffs do not plead that defendants made any false statement of material fact or that plaintiffs relied on any false statements when entering into the marker. (Doc. # 24 at 12). Plaintiffs respond that Walid was "intentionally and deliberately misled to believe that he would receive special treatment. (Doc. # 28 at 14). He never believed the marker would be referred to the District Attorney." Plaintiffs further assert that "Defendants' misconduct is not yet known since no discovery has occurred, [but] it is not limited to the referral of the marker to the District Attorney, as Defendants contend." (Doc. # 28 at 14).

The court finds that plaintiff cannot state a claim for deceptive trade practices. The alleged misstatements that Caesars would not take action on the defaulted marker occurred after Walid had received the marker. Walid did not enter into the marker with the promise that, should he default, Caesars would not prosecute. Accordingly, plaintiffs cannot assert that Caesars induced Walid to execute the marker based on the promise that he would not be prosecuted should he default.

Further, plaintiffs do not plead any facts to suggest that Walid was coerced, under duress, or intimidated by Caesars or its employees when executing the marker. Accordingly, plaintiffs' claim for deceptive trade practices will be dismissed.

*D. Conversion*

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden Rest.,* 130 P.3d 1280, 1287 (Nev.

**James C. Mahan**
**U.S. District Judge**

- 6 -

2006). "[A] conversion imports an unlawful act, or an act which cannot be justified or excused in law.'" *Ferreira v. P.C.H. Inc.*, 774 P.2d 1041, 1043 (Nev. 1989).

Plaintiffs allege only that defendants have "wrongly exerted dominion over Plaintiffs' personal property – namely, their money – for [defendants'] own benefit and financial gain." Plaintiffs plead no specific facts in support of a conversion claim. Presumably, plaintiffs seek recovery of the funds associated with the marker. However, because plaintiffs do not plead sufficient facts for the court to determine what personal property or money they seek to assert the conversion claim for, plaintiffs fail to meet the requisite Rule 12(b)(6) standard.

Further, to the extent that plaintiffs seek to assert conversion with respect to defendants' collection of the funds associated with the marker, plaintiffs fail to plead any facts to suggest that the defendants' collection of the marker funds was legally wrongful. Accordingly, plaintiffs' claim for conversion will be dismissed.

E.  Civil Conspiracy

In Nevada, "[a]n actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (internal quotations omitted). "To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors, whether explicit or tacit." *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

"Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Collins v. Union Federal Savings & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).

Plaintiffs allege that defendants "knowingly and willfully conspired and agreed among themselves to commit the unlawful acts alleged herein." (Doc. # 1 at 8). Plaintiffs also argue in their response to defendants' motion to dismiss that civil conspiracies among corporate employees are actionable if the conspirators are independently seeking individual pecuniary gain through unlawful conduct. (Doc. # 28 at 15) (citing *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007).

James C. Mahan
U.S. District Judge

- 7 -

First, plaintiffs' allegations are conclusory.  Second, plaintiffs cannot maintain a civil conspiracy claim against Caesars and its employees as a matter of law.  *See Bishop v. Potter*, No. 2:08-cv-00726-RLH-GWF, 2010 WL 3910063, at *9 (D. Nev. Oct. 1, 2010) (dismissing conspiracy claim under Rule 12(b)(6) because employers and employees cannot conspire, in the legal sense, within the scope of employment) *aff'd sub nom. Bishop v. Donahoe*, 479 F. App'x 55 (9th Cir. 2012). Defendants in this action are Caesars and numerous Caesars employees.  Plaintiffs make no allegations that the individual defendants were acting outside of their official capacities on behalf of the corporation when extending the marker to Walid or referring the marker to the district attorney for prosecution.  Plaintiffs also plead no facts to assert that the individual defendants sought or achieved individual pecuniary gain through unlawful conduct.  Accordingly, plaintiffs' claim for civil conspiracy will be dismissed.

### F.  Unjust Enrichment

Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another.  *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (1981).  The essential elements of a claim for unjust enrichment are 1) a benefit conferred on the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Id.*  The purpose of unjust enrichment is to do justice to the parties regardless of their intention.  *Id.*

"An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Ramos v. Liberty Mut. Ins. Co.*, No. 2:14-cv-839-KJD-PAL, 2014 WL 4354138, at *5 (D. Nev. Sept. 3, 2014) (quoting *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)).  Unjust enrichment applies to situations where there is no legal contract but where the defendant is in possession of money or property which it, in good conscience and justice, should not retain.  *Id.* (citing *Leasepartners*, 942 P.2d at 187).

Here, plaintiffs plead merely that defendants have been "unjustly enriched by their acquisition and retention of Plaintiffs' monies." (Doc. # 1 at 8).  Plaintiffs' assertion is conclusory.

James C. Mahan
U.S. District Judge

- 8 -

Further, plaintiffs plead no facts to assert that the marker was not valid and enforceable as a negotiable instrument under Nevada law. *See Mandalay Resort Grp. v. Miller (In re Miller)*, 292 B.R. 409, 414 (9th Cir. BAP 2003) (holding that a casino marker, and the gambling debt the marker represents, "'are valid and may be enforced by legal process'") (quoting NRS § 463.368(1)). Walid defaulted on the marker. Thus, Caesars had a legal right to enforce the marker. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 535 (9th Cir. 2011); NRS 104.3103 cmt. 2 ("Dishonor by any drawee named in the draft entitles the holder to rights of recourse against the drawer[.]").[2] Plaintiff's claim for unjust enrichment will be dismissed.

G. Leave to Amend

Plaintiffs' response requests leave to amend their complaint "[i]n the event that the [c]ourt is inclined to grant [d]efendants' [m]otion [to dismiss]." (Doc. # 28 at 15). Pursuant to District of Nevada Special Order 109(III)(F)(4), a separate document must be filed on the docket for each purpose. *See Stacey v. Mercury Cas. Co.*, No. 2:14-cv-814-JCM-GWF, 2014 WL 3816513, at *1 (D. Nev. Aug. 4, 2014). The court does not consider plaintiffs' request for leave to amend unless it is filed separately, as a motion.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Caesars Entertainment Corp., Steve Morris, Joseph Rahi, and Gerald Tuthill's motion to dismiss (doc. # 24) be, and the same hereby is, GRANTED. The clerk shall enter judgment accordingly and close the case.

DATED April 30, 2015.

/s/ James C. Mahan
UNITED STATES DISTRICT JUDGE

---

[2] The court notes that one court in this jurisdiction has held that markers are express contracts. *See Morales v. Aria Resort & Casino, LLC*, 995 F. Supp. 2d 1176 (D. Nev. 2014), *appeal docketed*, No. 14-15289 (9th Cir. February 18, 2014). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Ramos v. Liberty Mut. Ins. Co.*, No. 2:14-cv-839-KJD-PAL, 2014 WL 4354138, at *5 (D. Nev. Sept. 3, 2014) (quoting *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)).

James C. Mahan
U.S. District Judge

- 9 -